OPINION OF THE COURT
Gary F. Marton, J.
After considering the testimony and the other evidence at the trial of this holdover proceeding, the court has granted petitioner a judgment of possession. The warrant may issue forthwith, but the same shall be without prejudice to any application for relief pursuant to RPAPL 753.
On October 1, 2003 petitioner served a predicate notice of termination that fixed October 31, 2003 as the date on which respondents’ month-to-month tenancy would end. On November 26, 2003 petitioner served and filed the petition and notice of petition herein. On December 1, 2003 respondents, acting pro se, entered into a stipulation of settlement which was “so ordered” by the court. They agreed, among other things, to vacate the premises by April 30, 2004 and to pay $700 per month as use and occupancy in the interim. A judgment of possession was entered and a warrant issued.
Thereafter, respondents retained counsel and moved to vacate the stipulation and for other relief. By a decision and order dated May 25, 2004 the court vacated the stipulation, judgment, and warrant. This proceeding was then transferred to the instant part for trial.
The court finds that petitioner owns the building in which the premises is located, that the premises is one apartment in a *860 building with two residential apartments over a store, that petitioner is the landlord and respondents were the tenants of the premises, that a predicate notice, petition, and notice of petition were duly served, and that petitioner otherwise proved a prima facie case.
In their answer, respondents raised two affirmative defenses.[1] One is that the termination notice was a nullity because respondents are not month-to-month tenants but instead are rent stabilized inasmuch as the premises is located in a horizontal multiple dwelling with six or more residential units. The other defense is that petitioner vitiated the termination notice by retaining respondents’ payment on November 5, 2003 of rent for November 2003, i.e., rent for the period after October 31, 2003, when respondents’ tenancy ended pursuant to the notice, and before November 26, 2004, when petitioner commenced this proceeding.
Horizontal Multiple Dwelling
The building in which the premises is located is one of five adjacent buildings. Their street addresses are 2-4, 6, 8, 10, and 12 Sutter Avenue.[2] The buildings face north onto Sutter Avenue, but 12 Sutter Avenue, which is the easternmost and is at the corner of Sutter and Ralph Avenue, also bears the street address 714 Ralph Avenue and has its entrance on that thoroughfare. The westernmost building, which includes the premises, has its entrance on Sutter Avenue but is at the corner of Sutter and East 98th Street. In the aggregate, the five buildings have seven residential apartments.
“In determining the existence of a regulated horizontal multiple dwelling the crucial factor . . . is . . . whether there *861 are sufficient indicia of common facilities, common ownership, management and operation to warrant treating the housing as an integrated unit and multiple dwelling subject to regulation.” (Matter of Salvati v Eimicke, 72 NY2d 784, 792 [1988] [citations omitted].)
The buildings sit on a real estate parcel that is identified as a single block and lot (block 3530, lot 8) on the tax map of the City of New York. Respondents proved that the five buildings share a boiler which is located in the building that also borders on Ralph Avenue. Respondents also showed that the City of New York’s Department of Housing Preservation and Development (HPD) issued a “Summary Violation Report” (SVR) for real estate identified as 69 East 98th Street in Brooklyn, tax map block 3530, lot 8, and that the report states that there are seven “Units” there.
The court assigns little probative weight to the SVR because HPD issued it for the stated purpose of showing whether there were violations of the housing code (HPD found none); HPD did not issue it for the purpose of showing the number of residential units at the property. Also, the report does not show the date of the inspection upon which it was presumably based.
Petitioner made a countervailing showing (a) that the buildings have separate entrances, separate basements, separate electric service and meters, separate gas service and meters, separate connections to the City of New York’s sewer main in Sutter Avenue, and separate roof parapets; (b) that there is not a common attic or interior hallway from which one might pass from any building to any other building; (c) that the certificate of occupancy describes 2-4 Sutter Avenue as a two-story building with a cellar, three commercial units on the ground floor, and two residential units on the second; and (d) that the adjacent building — 6 Sutter Avenue — has its own certificate of occupancy.
The court holds that taking all of the evidence into consideration, respondents did not prove their defense that the premises is located in a horizontal multiple dwelling. (Cf., Salvati v Eimicke, supra; Yahudaii v Lawson, 2 Misc 3d 5 [App Term, 2d Dept 2003] [where the court held that the tenant’s showing of common ownership of two buildings, combined tax assessment, *862 common water meter,[3] common front steps and facade, and common roof was insufficient to prove a horizontal multiple dwelling where the landlord showed that the buildings had different street addresses, certificates of occupancy, multiple dwelling registrations numbers, shared only a common wall, and did not have any passageway connecting one to the other].)
Vitiation of the Termination Notice
A tenant served with a predicate termination notice may defend on the ground that the landlord vitiated the notice by accepting rent for the posttermination period. (205 E. 8th St. Assoc, v Cassidy, 192 AD2d 479 [1st Dept 1993], revg on op of McCooe, J., NYLJ, Sept. 27, 1991, at 21, col 4 [App Term, 1st Dept].) At bottom, this defense is one of waiver (Goldman v Beer aft, NYLJ, July 13, 2001, at 18, col 2 [App Term, 1st Dept]).
To make out this defense, respondents had to prove a “voluntary abandonment. . . of a known right” (Jefpaul Garage Corp. v Presbyterian Hosp., 61 NY2d 442, 446 [1984]). That is, respondents had to establish that petitioner chose to abandon its right to terminate respondents’ tenancy and to enforce that termination. Such a waiver “is essentially a matter of intent, which ‘must be unmistakably manifested, and is not to be inferred from a doubtful or equivocal act’ (Ess & Vee Acoustical & Lathing Contr. v Prato Verde, 268 AD2d 332, quoting Orange Steel Erecters v Newburgh Steel-Products, 225 AD2d 1010, 1012)” Beer aft, supra at 18, col 2).
Respondents did not offer any evidence directly probative of such an intent. Respondents did not testify that any agent of petitioner’s told respondents that petitioner wanted them to continue their tenancy. There was no showing of a tender of a lease renewal or other document that evinced a desire on petitioner’s part to continue,, reinstate, or revive respondents’ tenancy.[4]
Respondents contend that the court ought to infer such an intent from petitioner’s retention of respondents’ payment, sent *863 by certified mail on November 5, 2003, of $700 as rent for November 2003. However, the evidence proved this contention only partially. In their verified answer, respondents averred that they paid the November rent by United States Postal Service (USPS) money order or orders. Their testimony, though, was to the somewhat different effect that they paid this rent by a money order dated November 5, 2003 in the amount of $400 and a personal check dated November 5, 2003 in the amount of $300 that bore the notation “Rent 11/03.”
Critically, respondents did not offer the money order or a copy thereof. They had ample time to secure a copy by having the USPS trace the money order. If the money order did not bear or was not accompanied by a written instruction that it was being tendered as payment for November 2003’s rent, then petitioner was free to apply the payment to any other debt then outstanding, such as pretermination rent for a prior month. Respondents did not offer anything probative of such an instruction and at that time there was at least $950 in pretermination rent that was outstanding.[5] From respondents’ offering neither a copy of the money order nor an excuse for not offering a copy, the court draws the negative inference that respondents did not restrict the money order’s use to the satisfaction, partially or entirely, of rent for November 2003.
Respondents did offer the receipt for the purchase of the $400 money order. It bears respondents’ notation that it was for “rent,” but there is no indication of the month or other period *864 for which the payment was intended. Not having been transmitted to petitioner, the notation “rent” was not binding.
Respondents proved that the money order and check were sent to petitioner on November 5, 2003 by certified mail, return receipt requested. Respondents might have but did not prove the date of petitioner’s receipt of the mailing. Respondent Eloisa Crawford testified credibly that the green return receipt card was returned to her but that she had been unable to find it.
Petitioner did not deny receiving the $400 money order and the $300 check prior to November 26, 2003. Accordingly, the court finds that on November 5, 2003 respondents mailed to petitioner a $400 money order which did not bear a notation restricting the use of the funds, and a $300 check which did bear a notation restricting the use of the funds to the satisfaction of rent for November 2003. The court finds that petitioner received the mailing in the ordinary course after November 5, 2003 and that during the roughly two-week period between the receipt and the commencement of this proceeding on November 26, 2003 petitioner did not return the check to respondents or present it for payment. The court finds that, during this period, there was a total of $950 in rent unpaid for August, September, and October 2003.
The issue of whether the predicate notice was vitiated is a matter of petitioner’s “ ‘unmistakably manifested’ ” intent (Beer a ft, supra at 18, cols 2-3). The court might infer from petitioner’s retention for about two weeks of respondents’ $300 check in partial payment of November’s rent that petitioner had changed its mind and had formed the intent to reinstate the tenancy. However, the court finds that other inferences might be drawn just as easily. Petitioner may not have formed any intent, having been perplexed by this tender in an amount equal to less than half a month’s rent. Or the court might infer that petitioner was alive to the possibility that cashing the check might prejudice the intended holdover proceeding and thus formed the intention to wait until the instant proceeding had been commenced before deciding what to do with the check. Other inferences might reasonably be drawn from petitioner’s two-week retention of the check. The court holds that by itself the retention was an equivocal act and does not suffice as the requisite affirmative showing of petitioner’s intention to rein *865 state respondents’ tenancy and to forgo further efforts to recover possession of the premises.[6]
Moreover, other evidence weighs in petitioner’s favor. Petitioner acquired the premises by a deed dated August 27, 2003. Only five weeks later, petitioner served the predicate notice for this proceeding. Then, petitioner initiated this proceeding promptly after expiration of the deadline fixed in the termination notice; petitioner did not, for example, wait several months as if trying to decide whether to pursue the matter. On the proceeding’s first return date, petitioner negotiated for the surrender of possession and the “time of the essence” provisions that are set out in the stipulation “so ordered” on December 1, 2003. Thereafter, when respondents moved to vacate the stipulation, petitioner opposed it vigorously. The court infers from these facts that petitioner purchased the parcel with the intention of terminating respondents’ tenancy (among others)[7] and that petitioner deliberately pursued this objective at all times.
The court finds as a matter of fact that petitioner did not voluntarily abandon its right to insist that respondents’ tenancy ended on October 31, 2003, and the court holds that there was no waiver.
Since petitioner proved a prima facie case and respondents did not prove a defense, the court grants the relief set out in the first paragraph above.

. Respondents raised a third defense of breach of the warranty of habitability. The court will not address it because petitioner, with respondents’ concurrence, did not present a claim for accrued rent and/or use and occupancy.

. During the tried, some evidence was received that tended to show that the structure at 2-4 Sutter was configured as two buildings, 2 Sutter and 4 Sutter, with one residential unit in each, and not as one building with two residential units. For instance, while there is one entrance to 2-4 Sutter, 2 Sutter and 4 Sutter have their own basements, electric meters, and gas meters. However, the certificate of occupancy describes the structure as one building containing two residential units. For the purpose of this decision and order, it is of no moment whether the premises is deemed the sole residential unit in 4 Sutter or one of the two residential units in 2-4 Sutter, and the court will treat the structure as one building with the address 2-4 Sutter Avenue.

. Apparently, though, there had been two water meters, one of which had been removed because of a defect and which the landlord was waiting to have replaced.

. There was some evidence that petitioner might have been willing to let respondents stay at the premises for an unspecified period for $1,400 per month, i.e., double what had been the rent of $700 per month. Petitioner’s possible willingness to enter into such a different tenancy with respondents did not vitiate the termination notice. (Cf., Fisher Ave. Realty Partners v Hausch, 186 Mise 2d 609, 611 [App Term, 2d Dept 2000] [where the court held that a landlord’s offer of a lease to a month-to-month tenant did not viti *863 ate a previously served notice of termination “particularly because it was at all relevant times clear that landlord would not accede to tenant’s remaining in possession on a month-to-month basis”].)

. Respondents’ exhibit I was Grace Crawford’s checking account statement for the period January 16 to February 13, 2004. It shows that on February 6, 2004 the bank paid seven checks that respondents had made payable to petitioner. The checks are dated September 4, 2003, September 4, 2003, October 3, 2003, November 5, 2003, December 3, 2003, January 5, 2004, and February 4, 2004. Respectively, they bear notations that they are payments of rent for “8/03,” “9/03,” “10/03,” “11/03,” “12/03,” “1/04,” and “2/04,” and they are in the amounts of $350, $350, $250, $300, $250, $250, and $250. The court finds that the checks for the pretermination months of August, September, and October 2003 total $950, and that this amount of rent for these months was outstanding through February 5, 2004.
Neither party offered a credible explanation for the apparent multi-month delays in the payment of these three checks or the check dated November 5, 2003. Also, the statement shows that on February 5, 2004 respondents transferred $460 into the account. Simple arithmetic shows that, without this transfer, there would not have been sufficient funds a day later for the bank to pay at least one of the seven checks that the bank did pay that day to petitioner.

. Some of the discussion of waiver in some of the decisions seems to suggest that this defense includes an element of estoppel, i.e., detrimental reliance by the tenant. (See, e.g., Metropolitan Ins,/Annuity Co. v Rowinski, NYLJ, Nov. 10, 2004, at 20, col 3 [Civ Ct, Bronx County] [“The doctrine of waiver was not conceived as a trap for the unwary or to elevate gamesmanship, but rather its underpinnings emanate from considerations of justifiable reliance a tenant may place upon actions taken by a landlord that are contrary to its prior position causing the tenant to believe he/she need no longer surrender the premises. ([S]ee Associated Real[]ties v Brown, 146 Misc2d 1069.)” Here, respondents did not contend that they had changed their position or otherwise reasonably relied to their detriment on petitioner’s retention of the check and money order. Respondents did not assert, for example, that at some time between November 5, 2003 and November 26, 2003 they did not begin to search or ceased searching for a new residence because they believed that petitioner’s retention of the check and money order signaled a change in petitioner’s plan to recover the premises.

. Shortly after acquiring the parcel, petitioner began at least one other holdover proceeding in this court to recover possession of another of the seven apartments in the five buildings. (2-12 Sutter, LLC v Goggins, Civ Ct, Kings County, Index No. 102947/03.)